UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
VICTORIA LEEVSON, MICHAEL LEIBZON,
MATANA ENTERPRISES LLC, KATHERINE TSIGEL,
VADKAT, INC., VLADISLAV PUSTOV, and
IMPERIAL ENTERPRISE SERVICES INC.,

                                 Index No.:  14-cv-6905

               Plaintiffs,

                                <u>SECOND</u>
      -against-                         <u>AMENDED</u>
                                <u>COMPLAINT</u>

AQUALIFE USA, INC., AQUALIFE, INC.,
ALEX GITELMAN, YAKOV SIONOV, and
VLADIMIR GORBACH,

               Defendants.
-------------------------------------------------------------------X

      Plaintiffs, VICTORIA LEEVSON, MICHAEL LEIBZON, MATANA

ENTERPRISES LLC, KATHERINE TSIGEL, VADKAT, INC., VLADISLAV

PUSTOV, and IMPERIAL ENTERPRISE SERVICES INC., by and through their

attorneys, Sobel Law Offices, P.C., as and for their Second Amended Complaint

against the Defendants allege, upon information and belief, that at all times

hereinafter mentioned:

## THE PARTIES

1. Plaintiff Victoria Leevson is a natural person residing at 2652 East 26th

    Street, # 3B, Brooklyn, NY 11235 ("Victoria").

2. Plaintiff Michael Leibzon is a natural person residing at 2652 East 26th Street, # 3B, Brooklyn, NY 11235 ("Michael").

3. Plaintiff Matana Enterprises LLC is a validly formed and operated New York limited liability company with an office at 2652 East 26th Street, # 3B, Brooklyn, NY 11235 ("Matana").

4. Victoria and Michael are members of Matana.

5. Plaintiff Katherine Tsigel is a natural person residing at 2432 East 28th Street, Brooklyn, NY 11235 ("Katherine").

6. Plaintiff VadKat, Inc., is a validly formed and operated New York corporation with an office at 2432 East 28th Street, Brooklyn, NY 11235 ("VadKat").

7. Katherine is a shareholder of VadKat.

8. Plaintiff Vladislav Pustov is a natural person.

9. Plaintiff Imperial Enterprise Services Inc., is a validly formed and operated New York corporation with an office at 45 Bay 20th Street, Apt. 2, Brooklyn, NY 11214.

10. Defendant AQUALIFE, INC, is a NY corporation operating out of and with an office at 65-09 99th Street, Unit 1U, Rego Park, NY 11374 ("Aqualife").

11. Defendant AQUALIFE USA, INC., is a NY corporation operating out of and with an office at 153 Avenue O, Brooklyn, NY 11204 ("Aqualife USA").

12. The corporate defendants have intermittently held themselves out as Aqualife or Aqualife USA and might be successors in interest and/or joint enterprises.

13. Defendant Alex Gitelman is a natural person residing at 2144 East 19th Street, Brooklyn, NY 11229 ("Gitelman").

14. Defendant Yakov Sionov is a natural person residing at 895 Cedarhurst Street, Valley Stream, NY 11581 ("Sionov").

15. Defendant Vladimir Gorbach is a natural person residing at 628 Van Dam Street, Valley Stream, NY 11581 ("Gorbach").

16. Gitelman, Sionov and Gorbach are the shareholders of Aqualife USA and Aqualife and exercise full and complete control over Aqualife USA and Aqualife.

## THE BACKGROUND FACTS

17. Aqualife USA and Aqualife were and are in the business of selling, installing and servicing water filtration systems for personal and commercial use in homes and buildings (the "Work"). To effectuate such sales and installations, Defendants hire both office employees to be paid wages and

3

dealers to generate sales on a commissions basis. Notably, many employees of Defendants also earn commissions pursuant to agreements with Defendants, in addition to the wages due those employees for office work performed.

18. Victoria became affiliated with Defendants in March 2009 and subsequently terminated her individual relationship with Aqualife in June 2010.

19. In May 2009, Victoria and Michael became dealers for Defendants through their company Matana. Pursuant to the dealer agreement, Matana was to be paid a commission and/or flat fee for each sale of products. Michael and Matana continued as a dealer with Defendants until July 26, 2012.

20. Matana continued the Work on an on-going basis and received sporadic payments from Defendants on an on-going basis. At no time did Defendants fully pay all of the commissions and/or fees due to Matana for the work performed, either directly or through payments to Victoria and/or Michael.

21. In July 2011, Victoria was invited back by the Defendants – through a direct solicitation by Defendant Sionov – to work for Defendants as a so-called sales manager in the office of Aqualife. Victoria started her position on August 1, 2011, at the agreed upon compensation of ten dollars ($10) per hour. In consideration for the hourly wages, Victoria's responsibilities included, *inter alia*, resolution of customer complaints and concerns,

4

managing technicians' schedules, as well as handling appointments and soliciting the hundreds of customers that left the services of Aqualife to return thereto. Furthermore, Victoria conducted training, for technicians, on sales and technological aspects of the product of Aqualife, three times a week for two hours each day. Moreover, at times Victoria was directed to conduct on site inspection and supervision of Defendants' technicians and their customer relations.

22.  Additionally, as has been admitted under oath by defendants, Victoria, as the sales manager, was entitled to receive (i) ten percent (10%) commissions of **<u>all</u>** sales generated by technical department, and (ii) a flat fee of $100 to $150 per sale of an upgraded system to any existing customer of Defendants. Despite repeated demands therefor, Defendants failed and refused to pay all of the commissions due to Victoria.

23. Notably, Victoria never had hiring or firing authority over the staff.

24. Victoria's scheduled office hours were from 9 am to 7 pm five days per week. However, on a nearly daily basis, as well as weekends, Victoria was obligated to answer all phone calls regarding customer and tech support effectively extending her working hours to 11 pm on weekdays, and 10 am to 11 pm on weekends. By way of example, even when she was attending

5

bridal fittings for her daughters wedding, Victoria was obligated to, and did, answer her phone, and provide support to technicians in the field.

25. Hours spent at the office of Aqualife, were tracked by Aqualife, via a computerized time keeping system. Each employee logged their hours, either by, entering their identification code into the system, or swiping their ID card through the time keeping device. No paid lunch hour was provided. If an employee missed any time from work, they were told their paychecks would be decreased by the amount of hours missed. All logs and computerized data regarding hours worked by Victoria and other employees were under the sole control of Defendants.

26. Despite abiding by the office hours, fulfilling the responsibilities in her position, and repeated demands to be paid her hourly wages pursuant to the agreement, Victoria was never paid by defendants neither her hourly nor her overtime wages.

27. Victoria's office employment with Aqualife was terminated by Defendant Gorbach on July 23, 2012, for the express reason of not paying Victoria her overdue hourly and overtime wages. Victoria's hourly and overtime wages have still not been paid by Defendants despite repeated demands therefor.

28. Defendants were fully aware of their legal obligation to pay hourly and overtime wages to all of their employees including Victoria. Instead, with

the precise intent to avoid Federal, State, and Local contribution obligations, Defendants failed and refused to do so.

29. Furthermore, Defendants employed services of accountants in their business operations, and thus were fully aware of their obligations to comply with the Fair Labor Standards Act, The Wage Theft Prevention Act, and all such other applicable Federal, state, and Local Laws and Regulations.

30. Despite such knowledge, Defendants knowingly and willfully chose to ignore their obligations.

31. Katherine began her employment with Defendants on or about May 2006. In January 2007, Katherine became an office manager, in title only. Her hours would depend on the shift for the day, but were never less than nine hours per day five days a week. (9am to 6pm, or 12pm -9pm.). In addition she was also in the office from 10-6 every Saturday and likewise had to be available for phone contact by field technicians and customers through 11pm every night.

32. The agreed upon hourly wage for Katherine was $10 per hour. In fact, Defendants provided written confirmation that Katherine's salary was supposed to be at least $450 per week – 45 hours at $10 per hour. In 2011, Katherine's hourly wage rate was increased to $11 per hour, but in fact was never paid.

33. Despite such agreement and written acknowledgement, Defendants have knowingly and willfully failed and refused to pay Katherine the hourly and overtime wages due and owing to her. Instead, Defendants continually promised to pay in the future. Alas, all such promises went unfulfilled.

34. Due to Defendants' such willful and knowing failure and refusal to pay the hourly and overtime wages due and owing to Katherine – and upon observing that Victoria was fired without being paid her hourly and overtime wages – Katherine, in October 2012, gave Defendants notice of her intention to quit unless she was properly paid. Defendants at this point demanded that Katherine train her replacements and she obliged.  When Katherine was not paid, despite still complying with her office duties and training additional personnel, she quit her position on November 9, 2012.

35. Katherine's responsibilities included, *inter alia*, opening and closing the office, creating and tracking schedules of technicians and office employees, training new employees, scheduling appointments with customers and assigning those jobs to technicians, processing payroll/payments to technicians and office employees and communicating with clients and all other correspondence. Katherine also handled all banking and financial transactions for Defendants relating to securing financing for customers of Defendants, resolving disputed charges, addressing non-payments by clients,

accepting and processing payments by clients and closing daily financial reports.

36. Katherine – pursuant to a separate agreement with Defendants – was also entitled to receive commissions as follows: (i) 35% from all sales of new systems by Katherine by phone, $40-$75 per sale of cartridges, (ii) when a technician was at the location and a sale of a new system or an upgrade was accomplished, Katherine was to receive $50-$150 depending on the system sold/upgraded and $10 per cartridge sold, and (iii)  $3 for each maintenance appointment of drinking systems, $10 for each maintenance appointment for a whole house system, $20 for each move of an existing system. To be sure, despite the agreements to pay commission and fees, Katherine is still owed such commissions and fees by Defendants.

37. In 2005, Vladislav and his company Imperial were hired by Defendants for the sales of the products of Defendants. Pursuant to agreement with Defendants, Vladislav and Imperial were to be paid commissions for sales, and flat fees for installation and service appointments. To date, Deednats have failed and refused to pay all of the commission and fees owed to Vladislav and Imperial.

38. Pursuant to agreement with Defendants, Michael, Matana, Vladislav and Imperial were to receive as commissions five percent (5%) of  service

charges for 2012 for each and every system that was sold by each of them at any time prior thereto. To be sure, no such commissions were paid to any of them.

## JURISDICTIONAL STATEMENT

39. This court has jurisdiction over this action pursuant to 29 U.S.C. 201. This is an action to recover unpaid wages, regular and overtime compensation, liquidated damages, costs and attorneys fees pursuant to the Fair Labor Standards Act of 1938 as Amended, 29 U.S.C. 201, *et seq.*,.

40. Venue lies in the Eastern District of New York pursuant to 29 U.S.C. 216 (b) in that the acts and omissions giving rise to this action occurred in Brooklyn, New York, in the Eastern District of New York.

## JURY DEMAND

41. Plaintiffs demand a trial by jury.

## AS AND FOR A FIRST CAUSE OF ACTION
## VIOLATION OF FLSA
## Plaintiff Victoria against all Defendants

42. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-41 above with the same force and effect as if more fully set forth herein.

43. At all times mentioned herein, Defendants had at least two (2) employees engaged in commerce.

44. At all times mentioned herein, the activities of the Defendants were related and performed through common control for a common business purpose, and constituted an enterprise within the meaning of §3(r) of the FLSA (28 U.S.C. §203[r]).

45. At all times mentioned herein, Defendants' employees (including Plaintiffs) participated in handling, selling, or otherwise working on good and materials which had moved in or been produced for commerce by other persons, including, but not limited to water filtration systems, accessories to the water filtration systems, filters, etc., and participated in financial transactions involving the interstate banking and finance systems and in the rendition of services to out-of-state customers.

46. At all times mentioned herein, the annual dollar volume of business of Defendants exceeded $500,000.00.

47. Victoria typically worked about 77 hours per week.

48. At all material times mentioned herein, Defendants failed and refused to pay Victoria straight time of $10 per hour and overtime of $15 per hour (the mandated pay of rate – 1.5 times the straight rate) for overtime work in excess of 40 hours worked per week.

49. Defendants' systematic and ongoing failure to pay legally mandated straight and overtime wages was not the result of a good faith mistake.

11

50. No agreement existed between Victoria and Defendants with respect to the payment of overtime for hours worked in excess of 40 in any given work week.

51. Based upon the foregoing, for violating the FLSA's straight and overtime wages pay requirements, Victoria has been damaged – and Defendants are liable – in an amount to be determined at trial but not less than $47,750 plus liquidated damages (for unpaid and untimely paid straight and overtime wages) of not less than $47,750, plus attorneys fees, costs and disbursements.

## AS AND FOR A SECOND CAUSE OF ACTION
## VIOLATION OF FLSA
## Plaintiff Katherine against all Defendants

52. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-51 above with the same force and effect as if more fully set forth herein.

53. At all times mentioned herein, Defendants had at least two (2) employees engaged in commerce.

54. At all times mentioned herein, the activities of the Defendants were related and performed through common control for a common business purpose, and constituted an enterprise within the meaning of §3(r) of the FLSA (28 U.S.C. §203[r]).

55. At all times mentioned herein, Defendants' employees (including Plaintiffs) participated in handling, selling, or otherwise working on good and materials which had moved in or been produced for commerce by other persons, including, but not limited to water filtration systems, accessories to the water filtration systems, filters, etc., and participated in financial transactions involving the interstate banking and finance systems and in the rendition of services to out-of-state customers.

56. At all times mentioned herein, the annual dollar volume of business of Defendants exceeded $500,000.00.

57. Katherine typically worked about 63 hours per week.

58. From January 2007 through January 2011, Defendants failed and refused to pay Katherine straight time of $10 per hour and overtime of $15 per hour (the mandated pay of rate – 1.5 times the straight rate) for overtime work in excess of 40 hours worked per week.

59. From January 2011 through November 9, 2012, Defendants failed and refused to pay Katherine straight time of $11 per hour and overtime of $15.50 per hour (the mandated pay of rate – 1.5 times the straight rate) for overtime work in excess of 40 hours worked per week.

60. Defendants' systematic and ongoing failure to pay legally mandated straight and overtime wages was not the result of a good faith mistake.

61. No agreement existed between Katherine and Defendants with respect to the payment of overtime for hours worked in excess of 40 in any given work week.

62. Based upon the foregoing, for violating the FLSA's straight and overtime wages pay requirements, Katherine has been damaged – and Defendants are liable – in an amount to be determined at trial but not less than $232,220.50 plus liquidated damages (for unpaid and untimely paid straight and overtime wages) of not less than $232,220.50, plus attorneys fees, costs and disbursements.

**AS AND FOR A THIRD CAUSE OF ACTION**
**ALL PLAINTIFFS AGAINST ALL DEFENDANTS**
**For an Accounting**

63. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-62 above with the same force and effect as if more fully set forth herein.

64. Aqualife and Aqualife USA are under the sole and exclusive control of Gitelman, Sionov and Gorbach. Defendants have retained control of the documents necessary to properly calculate the wages, commissions and fees owed to the Plaintiffs and have refused to pay all of such wages, commissions and fees to the Plaintiffs.

14

65. Plaintiffs are entitled to access to the financial and corporate documents of Aqualife and Aqualife USA as creditors of Aqualife and Aqualife USA that have not been repaid. Access to the financial and corporate documents in paper and electronic form is necessary as time keeping and bookkeeping was routinely performed by Defendants in electronic format.

66. Without an accounting the full extent of the plaintiffs' damages cannot be determined.

## AS AND FOR A FOURTH CAUSE OF ACTION
## BREACH OF CONTRACT
## Plaintiffs Victoria Michael and Matana against all Defendants

67. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-66 above with the same force and effect as if more fully set forth herein.

68. Pursuant to the agreements with defendants, Victoria, Michael and Matana sold water systems on behalf of Defendants. Accordingly, Victoria, Michael and Matana were entitled to receive commissions for the water systems sold by them. Not all such commissions – duly earned and owing – have been paid by Defendants in violation of such agreements.

69. Due to the joint and several actions of the Defendants, Victoria, Michael and Matana, jointly and severally, have been damaged in an amount to be determined at trial, but not less than $100,000.00.

15

## AS AND FOR A FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT
## Plaintiffs Katherine and VadKat against all Defendants

70. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-69 above with the same force and effect as if more fully set forth herein.

71. Pursuant to the agreements with Defendants, Katherine and VadKat sold water systems on behalf of Defendants. Accordingly, Katherine and VadKat were entitled to receive commissions for the water systems sold by them. Not all such commissions – duly earned and owing – have been paid by Defendants in violation of such agreements.

72. Due to the joint and several actions of the Defendants, Katherine and VadKat, jointly and severally, have been damaged in an amount to be determined at trial, but not less than $100,000.00.

## AS AND FOR A SIXTH CAUSE OF ACTION
## BREACH OF CONTRACT
## Plaintiffs Vlad and Imperial against all Defendants

73. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-72 above with the same force and effect as if more fully set forth herein.

74. Pursuant to the agreements with Defendants, Vlad and Imperial sold water systems on behalf of Defendants. Accordingly, Vlad and Imperial were

16

entitled to receive commissions for the water systems sold by them. Not all such commissions – duly earned and owing – have been paid by Defendants in violation of such agreements.

75. Due to the joint and several actions of the Defendants, Vlad and Imperial, jointly and severally, have been damaged in an amount to be determined at trial, but not less than $50,000.00.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### BREACH OF CONTRACT
### Plaintiffs Michael, Matana, Katherine, VadKat, Vlad and Imperial against all Defendants

76. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-75 above with the same force and effect as if more fully set forth herein.

77. Pursuant to the agreements with Defendants, whenever a water system was sold, the party that effectuated said sale was entitled to a five percent (5%) commission for all servicing and products sold to maintain such system in the following year.

78. Each of Michael, Matana, Katherine, VadKat, Vlad and Imperial sold water systems to customers on behalf of Defendants in 2011. Accordingly, they and each of them was in 2012 entitled to the 5% commission, *supra*, on all of the servicing and supplies/products sold to the customers to maintain such

17

systems sold by them prior thereto. No such commissions were paid in 2012 nor at any time thereafter.

79. Due to the joint and several actions of the Defendants, Plaintiffs were damaged as follows: (i) Michael and Matana, jointly and severally, have been damaged in an amount to be determined at trial, but not less than $10,000.00; (ii) Katherine and VadKat, jointly and severally, have been damaged in an amount to be determined at trial, but not less than $10,000.00, and (iii) Vlad and Imperial, jointly and severally, have been damaged in an amount to be determined at trial, but not less than $10,000.00.

## AS AND FOR A EIGHTH CAUSE OF ACTION
## BREACH OF CONTRACT
## Plaintiff Katherine against all Defendants

80. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-79 above with the same force and effect as if more fully set forth herein.

81. Pursuant to the agreements with Defendants, as evidenced by written confirmations by Defendants, Katherine was to be paid a salary – not commissions – on an hourly basis of at least $450.00 per week for 45 hours of work, at the hourly rate of $10 per hour. In 2011 the hourly wages were increased to $11 per hour. No such salary was ever paid to Katherine by

Defendants despite continued assurances that it would be so paid. Katherine was employed pursuant to this agreement from January 2007 through November 2012.

82. Due to the joint and several actions of the Defendants, Katherine was damaged in an amount to be determined at trial, but not less than $136,000.00.

## AS AND FOR A NINTH CAUSE OF ACTION
## BREACH OF CONTRACT
## Plaintiff Victoria against all Defendants

83. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-82 above with the same force and effect as if more fully set forth herein.

84. Pursuant to agreements with defendants, Victoria, was entitled to receive ten percent (10%) commissions for the sales generated by the technical department. Not all such commissions – duly earned and owing – have been paid by Defendants in violation of such agreements.

85. Due to the joint and several actions of the Defendants, Victoria has been damaged in an amount to be determined at trial, but not less than $1,000,000.00.

## AS AND FOR A TENTH CAUSE OF ACTION
## VIOLATION OF WAGE THEFT PREVENTION ACT
### Plaintiff Victoria against all Defendants

86. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-85 above with the same force and effect as if more fully set forth herein.

87. Defendants as employers in New York State, are subject to the New York Labor Laws in general and to the Wage Theft Prevention Act in particular.

88. The Wage Theft Prevention Act ("WTPA"), *inter alia*, (i) prohibits employers from failing and refusing to pay duly earned and owing wages to employees and (ii) requires that the employer provide each employee - at the time of hire and every year prior to February 1 - with a notice setting forth thereon the rate and other details of pay for such employee.

89. Defendants herein have failed and refused to properly pay Victoria and have failed to properly provide to her the required notices under WTPA.

90. Based upon the foregoing, for violating the WTPA straight and overtime wages pay requirements, Victoria has been damaged – and Defendants are liable – in an amount to be determined at trial but not less than $47,750 plus liquidated damages (for unpaid and untimely paid straight and overtime wages) of not less than $47,750, plus attorneys fees, costs and disbursements, as well as statutory penalties of not less than $10,000.

20

## AS AND FOR A ELEVENTH CAUSE OF ACTION
## VIOLATION OF WAGE THEFT PREVENTION ACT
### Plaintiff Katherine against all Defendants

91. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-90 above with the same force and effect as if more fully set forth herein.

92. Defendants as employers in New York State, are subject to the New York Labor Laws in general and to the Wage Theft Prevention Act in particular.

93. The Wage Theft Prevention Act ("WTPA"), *inter alia*, (i) prohibits employers from failing and refusing to pay duly earned and owing wages to employees and (ii) requires that the employer provide each employee - at the time of hire and every year prior to February 1 - with a notice setting forth thereon the rate and other details of pay for such employee.

94. Defendants herein have failed and refused to properly pay Katherine and have failed to properly provide to her the required notices under WTPA.

95. Based upon the foregoing, for violating the WTPA straight and overtime wages pay requirements, Katherine has been damaged – and Defendants are liable – in an amount to be determined at trial but not less than $232,220.50 plus liquidated damages (for unpaid and untimely paid straight and overtime wages) of not less than $232,220.50, plus attorneys fees, costs and disbursements, as well as statutory penalties of not less than $10,000.

## AS AND FOR A TWELFTH CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAWS
### Plaintiff Katherine against all Defendants

96. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-95 above with the same force and effect as if more fully set forth herein.

97. At all relevant times, Defendants employed the Katherine within the meaning of New York Labor Law§§ 2 and 651.

98. Defendants knowingly and willfully violated Katherine's rights by failing to pay her minimum wages in the lawful amount for hours worked.

99.  Defendants knowingly and willfully violated Katherine's rights by failing to pay her overtime compensation at the rate of time and one-half for each hour worked in excess of forty ( 40) hours in a workweek.

100.     If any payments were rendered to Katherine, Defendants failed to furnish Katherine with a statement with any payment of wages listing gross wages, deductions and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations§ 146-2.3.

101.     Defendants failed to keep true and accurate records of hours worked by Katherine, the wages, if any, paid to Katherine, and other similar information in contravention of New York Labor Law § 661.

102.     Defendants failed to establish, maintain, and preserve for not less than six ( 6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194( 4 ), and New York State Department of Labor Regulations§ 146-2.1.

103.     Defendants failed to properly disclose or apprise Katherine of her rights under the New York Labor Law.

104.     Due to the Defendants' New York Labor Law violations, Katherine is entitled to recover from Defendants her unpaid minimum wages, unpaid overtime compensation, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law § 663(1) *et al.* and § 198.

105.     Katherine is also entitled to liquidated damages pursuant to New York Labor Law § 663(1), as well as civil penalties and/or liquidated damages pursuant to the New York State Wage Theft Prevention Act.

106.     Based upon the foregoing, for violating the applicable New York Labor Laws pertaining to straight and overtime wages pay requirements, Katherine has been damaged – and Defendants are liable – in an amount to be determined at trial but not less than $232,220.50 plus liquidated damages

(for unpaid and untimely paid straight and overtime wages) of not less than $232,220.50, plus attorneys fees, costs and disbursements.

**AS AND FOR A THIRTEENTH CAUSE OF ACTION**
**VIOLATION OF NEW YORK LABOR LAWS**
**Plaintiff Victoria against all Defendants**

107.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-106 above with the same force and effect as if more fully set forth herein.

108.    At all relevant times, Defendants employed the Victoria within the meaning of New York Labor Law§§ 2 and 651.

109.    Defendants knowingly and willfully violated Victoria's rights by failing to pay her minimum wages in the lawful amount for hours worked.

110.    Defendants knowingly and willfully violated Victoria's rights by failing to pay her overtime compensation at the rate of time and one-half for each hour worked in excess of forty (40) hours in a workweek.

111.    If any payments were rendered to Victoria, Defendants failed to furnish Victoria with a statement with any payment of wages listing gross wages, deductions and net wages, in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations§ 146-2.3.

112.    Defendants failed to keep true and accurate records of hours worked by Victoria, the wages, if any, paid to Victoria, and other similar information in contravention of New York Labor Law § 661.

113.    Defendants failed to establish, maintain, and preserve for not less than six ( 6) years payroll records showing the hours worked, gross wages, deductions, and net wages for each employee, in contravention of the New York Labor Law § 194( 4 ), and New York State Department of Labor Regulations§ 146-2.1.

114.    Defendants failed to properly disclose or apprise Victoria of her rights under the New York Labor Law.

115.    Due to the Defendants' New York Labor Law violations, Victoria is entitled to recover from Defendants her unpaid minimum wages, unpaid overtime compensation, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law § 663(1) *et al.* and § 198.

116.    Victoria is also entitled to liquidated damages pursuant to New York Labor Law § 663(1), as well as civil penalties and/or liquidated damages pursuant to the New York State Wage Theft Prevention Act.

117.    Based upon the foregoing, for violating the applicable New York Labor Laws pertaining to straight and overtime wages pay requirements,

25

Victoria has been damaged – and Defendants are liable – in an amount to be

determined at trial but not less than $47,750 plus liquidated damages (for

unpaid and untimely paid straight and overtime wages) of not less than

$47,750, plus attorneys fees, costs and disbursements.

**WHEREFORE**, based upon the foregoing causes of action, Plaintiffs request

the Court award the damages sought in each individual cause of action as to be

determined at trial, but not less than $1,995,970.50. In addition Plaintiffs

respectfully request judgment awarding statutorily mandated attorneys fees under

FLSA and NYLL together with prejudgment interest, costs and disbursements.


Sobel Law Offices PC


By:____/s/ SS4424_____
Svetlana Sobel, Esq. – SS4424
175 Eileen Way
Syosset, NY 11791
(516) 496-1903
(631) 532-4828 facsimile (not
for Service of legal documents)