UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**MEMORANDUM & ORDER**

14-CV-6905

VICTORIA LEEVSON, MICHAEL LEIBZON,
MATANA ENTERPRISES LLC, KATHERINE
TSIGEL VADKAT, INC., VLADISLAV
PUSTOV, and IMPERIAL ENTERPRISE
SERVICES INC.,

                Plaintiffs,

      – against –

AQUALIFE USA, INC., AQUALIFE, INC.,
ALEX GITELMAN, YAKOV SIONOV, and
VLADIMIR GORBACH,

                Defendants.

| **PARTIES** | **APPEARANCES** |
|---|---|
| **Victoria Leevson, Michael Leibzon, Matana Enterprises LLC, Katherine Tsigel, VadKat, Inc., Vladislav Pustov, and Imperial Enterprise Services Inc.** | Svetlana Sobel<br>Jeremy M. Poland<br>Sobel Law Offices PC<br>175 Eileen Way<br>Syosset, NY 11791 |
| **Aqualife USA, Inc., Aqualife, Inc., Alex Gitelman, Yakov Sionov, and Vladimir Gorbach** | Robert Bondar<br>Law Office of Robert Bondar<br>28 Dooley Street, 3rd floor<br>Brooklyn, NY 11235 |

JACK B. WEINSTEIN, Senior United States District Judge:

## Table of Contents

I.   Introduction...................................................................................................1

II.  Facts...........................................................................................................2

    A.   Nature of Aqualife's Business ............................................. 2

    B.   Plaintiffs Victoria Leevson, Michael Leibzon, and Matana ........................... 2

    C.   Plaintiffs Katherine Tsigel and VadKat ................................. 4

    D.   Plaintiffs Vladislav Pustov and Imperial ................................. 6

III. Procedural History...........................................................................................7

    A.   Defendants' Motion for Summary Judgment........................... 7

    B.   Plaintiffs' Motion for Summary Judgment .............................. 7

IV.  Law...........................................................................................................7

V.   Application of Fact to Law..............................................................................8

    A.   Payments ................................................................. 9

    B.   Independent Contractor Exemption................................... 11

    C.   Statute of Limitations ................................................ 14

        1.   FLSA............................................................. 14

        2.   NYLL ........................................................... 16

    D.   Retroactivity of the NYLL............................................ 17

    E.   Remand of State Law Claims......................................... 18

VI.  Conclusion ................................................................................................ 19

## I.   Introduction

This case involves payments to salespersons on a commission basis.  They sue on a theory of wages with deficiencies in overtime and other wage calculations.  Factual issues and the tangled facts on commissions, independent entrepreneurship, and working hours require a jury trial.

Plaintiffs Victoria Leevson, Michael Leibzon, Matana Enterprises LLC ("Matana"), Katherine Tsigel, VadKat, Inc. ("VadKat"), Vladislav Pustov, and Imperial Enterprise Services Inc. ("Imperial") (together, "plaintiffs") are former workers of defendants Aqualife USA, Inc., Aqualife, Inc. (together, "Aqualife"), Alex Gitelman, Yakov Sionov, and Vladimir Gorbach (together, "defendants").

Plaintiffs allege that defendants did not pay them for work they performed for defendants over the course of several years.  All plaintiffs claim breach of contract for unpaid commissions, and two plaintiffs allege minimum wage and overtime payment violations under the Fair Labor Standards Act ("FLSA") and the New York State labor law ("NYLL"), as amended by the New York Wage Theft Prevention Act ("WTPA").  They also claim they were not provided with the required notice statements pursuant to the WTPA.

Defendants have moved for summary judgment.  Argued primarily is that they are exempt from the FLSA and NYLL requirements, and that in any event, they paid plaintiffs for all services they performed.  *See generally* Mem. of Law in Supp. of Defs.' Mot. for Summ. J., July 14, 2016, ECF No. 72-2 ("Defs.' Mem.").

Plaintiffs have cross-moved.  They claim that they are entitled to unpaid wages and overtime, unpaid commissions, and damages and that defendants are not exempt under the FLSA

and NYLL requirements.  *See generally* Mem. of Law in Supp. of Pls.' Mot. for Summ. J., July

15, 2016, ECF No. 73-14 ("Pls.' Mem.").

## II.   Facts

### A.   Nature of Aqualife's Business

Defendant Aqualife is a New York corporation in the business of selling, maintaining,

and distributing water purification and filtration systems and equipment.  *See* Decl. of Yakov

Sionov, July 14, 2016, ECF No. 72-3 ("Sionov Decl."), at ¶ 3; Defs.' Local Civ. R. 56.1

Statement, July 12, 2016, ECF No. 72-1 ("Defs.' 56.1 Statement"), at ¶ 5.  Defendants Alex

Gitelman, Yakov Sionov, and Vladimir Gorbach are principal owners of Aqualife.  *See* Defs.'

56.1 Statement at ¶ 4.

Aqualife pays its office workers on a wage basis and also hires "dealers" to work on a

commission basis.  Some workers also have agreements with Aqualife that entitle them to earn

commissions in addition to the wages they receive for office work performed.  *See, e.g.*, Aff. of

Victoria Leevson in Supp. of Mot. for Summ. J., July 15, 2016, ECF No. 73-10 ("Leevson

Aff."), at ¶¶ 4, 13; Hr'g Tr., Sept. 20, 2016, ("Hr'g Tr."), at 3:2-20.  Defendants and plaintiffs

did not agree to plaintiffs' commission rates in writing, and defendants claim that they reserved

the right to unilaterally change commission rates or make deductions to commission payments at

any time.  Hr'g Tr. at 16:6-18:8.  Defendants maintain that they were not attempting to

circumvent the requirements of the federal and state employment laws.  *Id.* at 18:9-12.

### B.   Plaintiffs Victoria Leevson, Michael Leibzon, and Matana

Plaintiffs Victoria Leevson and Michael Leibzon are members of Matana, a corporate

entity which was to receive commission payments due to Victoria Leevson and Michael Leibzon

for work they performed for defendants.  Leevson Aff. at ¶ 3; Aff. of Michael Leibzon in Supp.

2

of Mot. for Summ. J., ECF No. 73-13, July 15, 2016 ("Leibzon Aff."), at ¶ 2; Letter from Svetlana Sobel, Sept. 19, 2016, ECF No. 91 ("Sept. 19 Letter"), at 1.  Plaintiffs contend that defendants required that Victoria Leevson and Michael Leibzon designate a corporate entity to receive payments for work they performed for Aqualife.  Leevson Aff. at ¶ 3; Leibzon Aff. at ¶ 2.  Victoria Leevson owns 5% in Matana, and Michael Leibzon owns 95%.  Hr'g Tr. at 8:16-24.

Victoria Leevson and Michael Leibzon became dealers for Aqualife in April 2009, and Victoria Leevson maintained this position until July 2010.  Leevson Aff. at ¶¶ 2-3.  Michael Leibzon maintained this position until July 2010, and resumed it in January 2012 through July 2012.  Leibzon Aff. at ¶¶ 2, 9, 18.  Both signed Independent Business Owner ("IBO") agreements with defendants.  Pls.' Summ. J. Mot. at Ex. A, ECF No. 73-2; Hr'g Tr. at 7:8-10. As dealers for Aqualife, plaintiffs claim they were to receive a 35% commission for each sale they performed, and a 40% commission for each sale they generated by themselves, without appointments booked by defendants.  Leevson Aff. at ¶ 4; Leibzon Aff. at ¶ 3.  According to plaintiffs, defendants almost never paid these commissions in full, and often deducted "gift" and installation fees from the commissions.  Leevson Aff. at ¶ 5; Leibzon Aff. at ¶ 4.

From August 2011 to July 2012, Victoria Leevson returned to Aqualife upon defendants' request and worked in Aqualife's offices.  Leevson Aff. at ¶ 13; Hr'g Tr. at 3:23-25.  She did not sign a new IBO agreement.  Leevson Aff. at ¶ 13.  She routinely worked more than 40 hours per week and her wages were $10 per hour.  *Id.* at ¶¶ 13, 18.  Plaintiffs claim that Victoria Leevson was also supposed to receive a 10% commission on all sales generated by the technical department in which she worked and a flat fee of $100 to $150 per sale of an upgraded system to any of Aqualife's existing customers.  *Id.* at ¶ 13.  According to plaintiffs, Victoria Leevson was never paid her hourly wages and overtime, and her commissions were not paid in full.  *Id.* at ¶¶

3

20, 25.

Plaintiffs further assert that Victoria Leevson and Michael Leibzon, like all other salespeople working for Aqualife, were supposed to receive a 5% commission for each maintenance package they sold to clients.  Leevson Aff. at ¶ 10; Leibzon Aff. at ¶ 8.  These residual commissions were to be paid at the end of each calendar year, even if a salesperson no longer worked for Aqualife.  Leevson Aff. at ¶¶ 10-11; Leibzon Aff. at ¶¶ 8-9.  According to plaintiffs, Michael Leibzon received his 5% commission in 2011, but not in 2012 or any year thereafter.  Leibzon Aff. at ¶ 9.

Plaintiffs argue that Aqualife violated the FLSA, WTPA, and NYLL by failing to pay Victoria Leevson her hourly and overtime wages and by failing to give her written notice of wage rates with each payment and when she was first employed.  Plaintiffs also claim that defendants committed breach of contract for failing to pay Victoria Leevson, Michael Leibzon, and Matana their commissions.  Plaintiffs additionally claim that defendants committed breach of contract for failing to pay Michael Leibzon and Matana their 5% residual commissions.  *See* Second Am. Compl., Oct. 7, 2016, ECF No. 93 ("Second Am. Compl.").

Defendants dispute this.  They assert that Victoria Leevson and Michael Leibzon requested that all of their commissions and Victoria Leevson's wages be paid to Matana, and that defendants paid all of the commissions and wages due.  *See* Sionov Decl. at ¶¶ 5-7; Defs.' Mem. at 18-23.

C.    **Plaintiffs Katherine Tsigel and VadKat**

Plaintiff Katherine Tsigel is a member of VadKat, a corporate entity which was to receive commission payments due to Katherine Tsigel for work she performed for defendants.  Aff. of Katherine Tsigel in Supp. of Mot. for Summ. J., July 15, 2016, ECF No. 73-11 ("Tsigel Aff."), at

¶¶ 15-16; Sept. 19 Letter at 1. Katherine Tsigel's husband owns VadKat, which was incorporated prior to Katherine Tsigel's work for defendants. Hr'g Tr. 11:17-13:4. Plaintiffs contend that defendants required that Katherine Tsigel designate a corporate entity to receive payments for work she performed for Aqualife. Tsigel Aff. at ¶¶ 15-16.

Katherine Tsigel began working for Aqualife in May 2006 and became an office manager in January 2007. *Id.* at ¶¶ 2-3. She worked for Aqualife until November 2012. *Id.* at ¶ 13. She did not sign an IBO agreement with defendants. *Id.* at ¶ 2. Routinely, she worked more than 40 hours per week, with an hourly wage of $10. *Id.* at ¶¶ 2-4, 8; Pls.' Summ. J. Mot. at Ex. E, ECF No. 73-6. In 2011, her wage increased to $11 per hour. Tsigel Aff. at ¶ 8. Pursuant to an agreement with Aqualife, she was also entitled to receive a commission of $40 to $75 for phone sales of cartridges, $50 to $150 for new systems sold or upgraded on location by a technician, $10 for cartridges sold on location by a technician, $3 for each maintenance appointment of drinking systems, $10 for each maintenance appointment for a whole house system, and $20 for each move of an existing system. *Id.* at ¶ 9. According to plaintiffs, Katherine Tsigel was never paid her hourly wages and overtime, and her commissions were not paid in full. *Id.* at ¶¶ 10-11.

Plaintiffs claim that Aqualife violated the FLSA, WTPA, and NYLL by failing to pay Katherine Tsigel her hourly and overtime wages and failing to give her written notice of wage rates with each payment and when she was first employed. Plaintiffs also claim that defendants committed breach of contract for failing to pay Katherine Tsigel and VadKat their commissions. Plaintiffs additionally claims that defendants committed breach of contract for failing to pay VadKat its 5% residual commissions. *See* Second Am. Compl.

Defendants dispute this. They assert that Katherine Tsigel requested that all of her commissions and wages be paid to VadKat, and that defendants paid all of her commissions and

wages due.  Sionov Decl. at ¶¶ 8, 14; Defs.' Mem. at 18-23.

### D.    Plaintiffs Vladislav Pustov and Imperial

Plaintiff Vladislav Pustov is a principal of Imperial, a corporate entity which was supposed to receive commission payments due to Vladislav Pustov for work he performed for defendants.  *See* Aff. of Vladislav Pustov in Supp. of Mot. for Summ. J., July 15, 2016, ECF No. 73-12 ("Pustov Aff."), at ¶¶ 1-2; Sept. 19 Letter at 1.  Plaintiffs contend that defendants required that Vladislav Pustov designate a corporate entity to receive payments for work he performed for Aqualife.  Pustov Aff. at ¶ 4.  Imperial was incorporated after Vladislav Pustov began working for defendants.  Hr'g Tr. at 14:8-24.

Vladislav Pustov worked for Aqualife from October 2005 to November 2012.  Pustov Aff. at ¶¶ 2, 14.  He signed an IBO agreement in October 2005.  *Id.* at ¶ 2; Pls.' Summ. J. Mot. at Ex. A, ECF No 73-2.  He was to receive a 35% commission for each sale performed, and a 40% commission for each sale he generated by himself, without appointments booked by defendants. Pustov Aff. at ¶ 3.  According to plaintiffs, defendants almost never paid these commissions in full, and often deducted "gift" and installation fees from Vladislav Pustov's commissions.  *Id.* at ¶ 5.  Vladislav Pustov also never received the $800 sales commission he should have received for a January 2012 sale.  Pustov Aff. at ¶ 8.

Vladislav Pustov, like all other salespeople working for Aqualife, was to receive a 5% commission for each maintenance package he sold to clients.  *Id.* at ¶ 9.  These residual commissions were to be paid at the end of each calendar year, even if a salesperson no longer worked for Aqualife.  *Id.*  According to plaintiffs, Vladislav Pustov did not receive his 5% commission in 2012 or any year thereafter.  *Id.* at ¶ 10.

Plaintiffs claim that Aqualife committed a breach of contract for failing to pay Vladislav

6

Pustov and Imperial commissions, including the 5% residual commissions.  *See* Second Am. Compl.

Defendants dispute this.  They assert that Vladislav Pustov requested his commissions be paid to Imperial, and that they paid all of his commissions through that channel.  *See* Sionov Decl. at ¶ 4; Defs.' Mem. at 18-23.

## III.   Procedural History

### A.   Defendants' Motion for Summary Judgment

Defendants moved for summary judgment on July 15, 2016, claiming:  (1) plaintiffs' FLSA claims are barred by the 2-year statute of limitations, (2) plaintiffs lack standing to assert FLSA, WTPA, and NYLL claims because they were independent contractors, not employees, of Aqualife, (3) payment of services, and (4) the court should decline to exercise supplemental jurisdiction over the remaining state law breach of contract claims and remand them to state court.  *See generally* Defs.' Mem.

### B.   Plaintiffs' Motion for Summary Judgment

On July 16, 2016, plaintiffs filed a cross-motion for summary judgement, claiming:  (1) plaintiffs Victoria Leevson and Katherine Tsigel have standing to assert FLSA, WTPA, and NYLL claims because they were employees, not independent contractors, of Aqualife, (2) defendants violated the hourly and wage provisions of the FLSA and NYLL, (3) defendants breached contracts for commissions with all plaintiffs.  *See generally* Pls.' Mem.

## IV.   Law

Summary judgment is appropriate when the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "When ruling on a summary judgment motion, the district court must construe

the facts in the light most favorable to the non-moving party, resolving all ambiguities and drawing all reasonable inferences against the movant." *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 247 (E.D.N.Y. 2015), *appeal dismissed* (June 18, 2015).  The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

No genuinely triable factual issue exists "if, on the basis of all the pleadings, affidavits and other papers on file, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).  If the movant meets this burden, the non-moving party must provide "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotation marks and citation omitted).

## V.    Application of Fact to Law

Defendants' motion for summary judgment seeks dismissal of plaintiffs' overtime and wage claims as well as their breach of contract claims, alleging that defendants tendered all payments due, paying for commissions through independent contractor channels.  *See generally* Defs.' Mem.

Plaintiffs' cross motion for summary judgment claims that defendants violated the FLSA and NYLL overtime and minimum wage provisions and breached their contracts for payment of commissions.  *See generally* Pls.' Mem.

Both motions for summary judgment are denied.  Material questions of fact exist with respect to all of plaintiffs' claims, which must be resolved by a jury.

A.      **Payments**

One of defendants' central arguments is that plaintiffs' breach of contract claims must be dismissed because defendants paid plaintiffs in full for their services through their corporate entities. Defs.' Mem. at 18-23. In support, defendants submit documentary evidence of weekly payments between $400 and $550 of Katherine Tsigel's wages Aqualife paid to VadKat. Mem. of Law in Opp'n to Pls.' Mot. for Summ. J. and in Further Supp. of Defs.' Summ. J. Mot. at Ex. 16, ECF No. 79-21; *see also* Hr'g Tr. 24:20-25:2. They also exhibit the 1099 tax form documents defendants gave to Matana and VadKat in 2011, indicating that defendants paid VadKat $126,512 for the work Katherine Tsigel and her husband performed that year, and $93,908 to Matana for the work Victoria Leevson and Michael Leibzon performed that year. *See* Defs.' Summ. J. Mot. at Ex. 27, ECF No. 72-32; Defs.' Summ. J. Mot. at Ex. 28, ECF No. 72-33. *See also* Defs.' Summ. J. Mot. at Ex. 9, ECF No. 72-15; Defs.' Summ. J. Mot. at Ex. 7, ECF No. 72-13; Defs.' Summ. J. Mot. at Ex. 6, ECF No. 72-12.

Plaintiffs respond that defendants did not pay most of the money due to them. Victoria Leevson, Michael Leibzon, Katherine Tsigel, and Vladislav Pustov testified to receiving only some of their commissions, which contained significant deductions. Leevson Aff. at ¶ 5; Leibzon Aff. at ¶ 4; Tsigel Aff. at ¶ 10; Pustov Aff. at ¶ 5. Michael Leibzon and Vladislav Pustov received their 5% commissions for 2011, but not for 2012 or any year thereafter. Leibzon Aff. at ¶ 9; Pustov Aff. ¶ 10; Pls.' Summ. J. Mot. at Ex. F, ECF No. 73-7. Vladimir Pustov recalls an $800 commission for a January 2012 sale that he never received. Pustov Aff. at ¶ 8. Katherine Tsigel and Victoria Leevson claim that they never received any of their wages or overtime payments. Tsigel Aff. at ¶ 11; Leevson Aff. at ¶ 20. Plaintiffs also maintain that despite discovery demands and court orders, defendants never actually produced documents

showing precisely how much money was owed to plaintiffs and how much was paid.  Mem. of Law in Opp'n to Defs.' Mot. for Summ. J., Aug. 19, 2016, ECF No. 80 ("Pls.' Opp'n Mem."), at 14-15.

Given the numerous claims asserted by numerous parties, this court requested that plaintiffs and defendants submit a chart to clarify the parties' specific claims and damages at issue.  Hr'g Tr. at 29:8-30:5.  The court finds that the parties have not sufficiently clarified the facts so that summary judgment would be warranted.  The facts as submitted in the parties' charts contradict each other, and in some cases, contradict the parties' previous claims and arguments.

For example, plaintiffs' Rule 56.1 statement, accompanying affidavits, and second amended complaint claim that Victoria Leevson and Katherine Tsigel were entitled to a 5% residual commission, but plaintiffs' chart indicates that they are not claiming a 5% residual commission.  *See* Pls.' 56.1 Statement at ¶ 13; Leevson Aff. at ¶ 10; Second Am. Compl. at ¶ 78; Chart of Pls.' Claims, Oct. 7, 2016, ECF No. 94 ("Pls.' Chart").  Plaintiffs' second amended complaint also states claims for total wages of at least $47,750 for Victoria Leevson and $232,220.50 for Katherine Tsigel excluding liquidated damages, but plaintiffs' chart indicates that total wages owed are $48,705 for Victoria Leevson and $154,960 for Katherine Tsigel. Second Am. Compl. at ¶¶ 51, 62; Pls.' Chart.  Plaintiffs' second amended complaint, plaintiffs' Rule 56.1 statement, and Victoria Leevson's affidavit further claim unpaid commissions owed to Victoria Leevson for $100 to $150 per sale of upgraded systems for existing customers, but plaintiffs' chart only lists a 10% commission for sales of the technical department owed to Victoria Leevson.  *See* Second Am. Compl. at ¶ 22; Pls.' 56.1 Statement at ¶ 8; Leevson Aff. at ¶ 13; Pls.' Chart.  Plaintiffs' second amended complaint also states claims for Victoria Leevson

and Katherine Tsigel for $10,000 statutory penalties for violation of the WTPA, but plaintiffs'

chart, filed with this court on the same day, only seeks $2,500 for each of the two plaintiffs in

statutory penalties.  *See* Second Am. Compl. at ¶¶ 90, 95; Pls.' Chart.  Finally, plaintiffs' second

amended complaint lists breach of contract claims for wages of $136,000 for Katherine Tsigel

and breach of contract claims for commissions of $1,000,000 for Victoria Leevson, but

plaintiffs' chart does not mention either claim.  *See* Second Am. Compl. at ¶¶ 82, 85; Pls.' Chart.

Defendants refute each of these claims, and assert in their reply chart that plaintiffs

Katherine Tsigel and Victoria Leevson are not entitled to overtime wages under the FLSA and

NYLL, and that all wages and commissions owed to all plaintiffs were fully paid.  Defs.' Reply

Chart, Oct. 14, 2016, ECF No. 95.

Significant issues of fact exist as to how much plaintiffs were owed and how they were

remunerated, if at all.  Neither plaintiffs nor defendants submit sufficient evidence on this point.

These question of fact cannot be resolved on summary judgment.  Once sufficient evidence has

been submitted on this argument, the question will be given to a jury.

### B. Independent Contractor Exemption

The FLSA and the NYLL provide minimum wage and overtime pay requirements for

covered, non-exempt workers who are employed by an enterprise engaged in commerce.  29

U.S.C. § 201 *et seq*; N.Y. Lab. Law § 652; 12 N.Y.C.R.R. § 142-2.1; 12 N.Y.C.R.R. § 142-2.2.

Neither the minimum wage requirement nor the overtime compensation requirement

applies to workers who are not employees, but independent contractors, of the employer.  *See*

*Brock v. Superior Care, Inc.*, 840 F.2d 1054 (2d Cir. 1988); *Velu v. Velocity Exp., Inc.*, 666 F.

Supp. 2d 300 (E.D.N.Y. 2009).  Whether a worker is an employee or independent contractor

hinges on the "economic reality" of the relationship under the FLSA and the "degree of control

11

exercised by the purported employer" under the NYLL.  *Id.* at 305 (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961) and *Bynog v. Cipriani Group. Inc.,* 770 N.Y.S.2d 692 (2003)).

Defendants argue that the minimum wage and overtime requirements of the FLSA and the NYLL are not applicable to plaintiffs Katherine Tsigel and Victoria Leevson because they were independent contractors, not employees of defendants at all times.  Defs.' Mem. at 9-18, 28.  As evidence, defendants rely primarily on the argument that they paid all compensation owed to Victoria Leevson and Katherine Tsigel to their respective independent businesses, Matana and VadKat, and never to the individuals.  Defs.' Mem. at 9-14.  Defendants also point to plaintiffs' tax returns, IBO agreements, and IRS 1099 forms for independent contractors that Aqualife issued to VadKat and Matana for the work individual plaintiffs performed for Aqualife as evidence that plaintiffs were independent contractors exempt from FLSA and NYLL wage and overtime requirements.  Defs.' Mem. at 12-18; *see, e.g.*, Defs.' Summ. J. Mot at Ex. 6, ECF No. 72-12; Defs.' Summ. J. Mot at Ex. 7, ECF No. 72-13; Defs.' Summ. J. Mot at Ex. 8, ECF No. 72-14; Defs.' Summ. J. Mot at Ex. 9, ECF No. 72-15; Defs.' Summ. J. Mot at Ex. 19, ECF No. 72-25; Defs.' Summ. J. Mot at Ex. 20, ECF No. 72-26; Defs.' Summ. J. Mot at Ex. 27, ECF No. 72-32; Defs.' Summ. J. Mot at Ex. 28, ECF No. 72-33.

In response, plaintiffs argue that defendants controlled all integral parts of Katherine Tsigel and Victoria Leevson's work, all of plaintiffs' work was performed on defendants' premises with defendants' equipment, and plaintiffs' work was integral to defendants' business, factors that make plaintiffs Katherine Tsigel and Victoria Leevson employees rather than independent contractors.  Pls.' Opp'n Mem. at 9-12.  They also rely on a 2011 IRS investigation, which concluded that a specific Aqualife worker who was working on a full-time, hourly wage

12

basis and "any other workers employed under substantially similar circumstances" should be treated as employees of defendants.  Pls.' Reply Mem. of Law in Further Supp. of Pls.' Mot. for Summ. J. at Ex. F, ECF No. 85-9; Pls.' Opp'n Mem. at 8-9.

Plaintiffs also argue that neither Victoria Leevson nor Katherine Tsigel ever claimed classification of an independent contractor on their tax returns.  Pls.' Opp'n Mem. at 12-13; Defs' Summ. J. Mot. at Ex. 8, ECF No. 72-14; Defs.' Summ. J. Mot. at Ex. 6, ECF No. 72-12. They point out that defendants mandated that payments be made to the corporate entities Matana and VadKat, and that plaintiffs had not requested this arrangement.  Pls.' Opp'n Mem. at 12-13; Leevson Aff. at ¶ 3, Tsigel Aff. at ¶¶ 15-17; Hr'g Tr., at 9:9-14, 14:1-19.  Plaintiffs also write that Katherine Tsigel never signed an IBO, and that Victoria Leevson only signed an IBO agreement for her first employment period with defendants, not the second.  Pls.' Opp'n Mem. at 13-14; Leevson Aff. at ¶ 13; Tsigel Aff. at ¶ 2.

It follows from this confusing factual background that significant questions of fact exist as to whether Katherine Tsigel and Victoria Leevson were employees covered by the FLSA and NYLL or independent contractors and thus exempt from the labor laws' strictures.  Whether an employee falls within an exemption under the FLSA "is a mixed question of law and fact." *Charlot v. Ecolab, Inc.*, 136 F. Supp. 3d 433, 448 (E.D.N.Y. 2015) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 548 (2d Cir. 2010)).  *See also Brock*, 840 F.2d at 1059 ("The existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts—whether workers are employees or independent contractors—is a question of law."); *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 350 (E.D.N.Y. 2015) (same); *Harper v. Gov't Emps. Ins. Co.*, 754 F. Supp. 2d 461, 463 (E.D.N.Y. 2010) ("The question of how an employee spends his time is factual, while the issue of whether such activities render the employee exempt

13

from the FLSA's overtime provision is a question of law.").

The same exemptions analysis as described above applies to the NYLL.  *See, e.g.*, *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 145 (2d Cir. 2013) (citing 12 N.Y.C.R.R. § 142–2.2); *Gold v. New York Life Ins. Co.*, No. 09–CV–3210, 2011 WL 2421281, at *3 (S.D.N.Y. May 19, 2011) (stating that the NYLL's overtime regulation "is defined and applied in the same manner as under the Fair Labor Standards Act"); *Gorey v. Manheim Servs. Corp.*, 788 F. Supp. 2d 200, 205 (S.D.N.Y. 2011) ("New York overtime requirements are subject to the exemptions of the FLSA.") (internal quotation marks and citation omitted).

The "economic realities" test—namely, the degree of control defendants had over plaintiffs, plaintiffs' investment in the business, the degree of skill required for plaintiffs' positions, the permanence of plaintiffs' positions, and the extent to which plaintiffs were integral to defendants' business—present factual issues to be determined by a jury.  Ascertaining whether plaintiffs in the instant case fall under the independent contractor exemption cannot be resolved on summary judgment.  *Sethi v. Narod*, 974 F. Supp. 2d 162, 181 (E.D.N.Y. 2013) ("Because there are disputed issues regarding how Plaintiff spent his working hours, the Court cannot decide whether Plaintiff falls within this exemption.  This is an issue of fact to be decided by a jury."); *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (explaining that the "question of how the [employees] spent their working time . . . is a question of fact.").

### C. Statute of Limitations

#### 1. FLSA

FLSA violations must be raised within two years from the date of the cause of action.  If the violation is willful, the statutory limitations period is extended to three years.  29 U.S.C. § 255(a); *see also Eschmann v. White Plains Crane Serv., Inc.*, No. 11–CV–5881, 2014 WL

1224247, at *5 (E.D.N.Y. Mar. 24, 2014).   To show that an employer acted with reckless disregard, a plaintiff must only establish "that the employer knew or had reason to know that it was or might have been subject to the FLSA."   *Id.* (quoting *Donovan v. Kaszycki & Sons Contractors, Inc.*, 599 F. Supp. 860, 870 (S.D.N.Y. 1984)).

Plaintiffs commenced the action on November 24, 2014.   *See* Compl., Nov. 24, 2014, ECF No. 1.   According to plaintiffs, Victoria Leevson was terminated by defendants on July 23, 2012, and Katherine Tsigel left her position at Aqualife on November 9, 2012, both of which events occurred more than two years from the filing of the complaint.   *See* Second Am. Compl. at ¶¶ 27, 81; Leevson Aff. at ¶ 21; Tsigel Aff. at ¶ 13.   They argue that defendants acted willfully, and as evidence, point to various instances in the record in which defendants admit that they were aware of the difference between workers who are paid as salaried employees receiving W-2 tax forms and workers who are paid as independent contractors receiving 1099 tax forms. Pls.' Opp'n Mem. at 6-8; *see, e.g.*, Sionov Decl. at ¶ 19; *see also* Pls.' Summ. J. Mot. at Ex. A, ECF No. 73-2; Pls.' Summ. J. Mot. at Ex. B, ECF No. 73-3; Pls.' Summ. J. Mot. at Ex. C, ECF No. 73-4; Pls.' Summ. J. Mot. at Ex. D, ECF No. 73-5 (showing that some plaintiffs concluded IBO agreements with defendants and that defendants paid some of their workers with commissions).

Defendants argue that Victoria Leevson and Katherine Tsigel's claims for overtime pay are barred, because they failed to file a lawsuit within two years of the employer's alleged wage violation.   Defs.' Mem. at 4-8.   They deny acting willfully, arguing that they neither knew they were in violation of the FLSA nor recklessly disregarded it.   *Id.* at 6-8.   They rely on the testimony of their corporate accountant, Igor Voskoboynik, who stated in his deposition that he never discussed Aqualife's obligation to pay overtime with the company's hourly employees,

because to his knowledge, all hourly employees were individuals receiving 1099 tax forms used for independent contractors, not salaried employees.  Defs.' Summ. J. Mot. at Ex. 12, ECF No. 72-18.  Defendants also claim that plaintiffs never objected to their classification as non-salaried workers who were paid as independent contractors through their corporate entities, leading to the conclusion that defendants were on notice that they were in violation of the FLSA.  Defs.' Mem. at 7; Sionov Decl. at ¶¶ 7-9.

Whether plaintiffs were paid through their corporate entities and were independent contractors are facts in dispute.  The basis of plaintiffs' FLSA claim is that Katherine Tsigel and Victoria Leevson were employees of defendants, objected to the defendants' classification of their workers, and were not paid through their corporate entities.  *See generally* Pls.' Opp'n Mem.; *see also* Leevson Aff. at ¶¶ 5, 20, 25; Tsigel Aff. at ¶¶ 10-11.  Without determining plaintiffs' classifications and whether they objected to those classifications, it cannot be ascertained whether defendants acted willfully in allegedly disregarding their obligations under the FLSA.

Whether the statute of limitations has run on plaintiffs' claims for unpaid wages and overtime is a question of fact that will need to be determined by a jury.  These claims were brought within three years, but over two years after they accrued.  The running of the limitations periods depends upon whether the alleged violations were willful:  if they were, the limitations period is three years and the claims are properly raised.  If there was no willfulness, then the limitations period is two years and the claims are not timely.

### 2.   NYLL

Unlike the FLSA, the statute of limitations for a claim under the NYLL is six years regardless of willfulness.  N.Y. Lab. Law § 663(3) (McKinney); *Shu Qin Xu v. Wai Mei Ho*, 111

F. Supp. 3d 274, 278 (E.D.N.Y. 2015).  All NYLL claims raised by plaintiffs fall within the six year limitations period.

### D.      Retroactivity of the NYLL

Under the NYLL, a plaintiff can recover liquidated damages of up to 25% of the total amount due to him if the employer's failure to pay was found to be willful and occurred prior to November 2009.  N.Y. Lab. Law § 198(1–a) (McKinney 2008).  For violations that occurred between November 2009 and April 2011, the 25% liquidated damages are presumed unless the employer could show that it had acted in good faith.  N.Y. Lab. Law § 198(1–a) (McKinney 2009).  On April 9, 2011, the NYLL was amended by the WTPA, increasing the amount of liquidated damages from 25% to 100% of any underpayment.  N.Y. Lab. Law § 198(1–a), *amended by* S.B. 8380, 233rd Legis., Reg. Sess. (N.Y. 2010); *see also Gold*, 730 F.3d at 143.

Under the 2011 amendment to the NYLL, also known as the WTPA, a plaintiff can also recover damages if the employer violates the requirement to furnish a notice statement with every payment of wages under section 195(3) of the NYLL or if the employer does not provide a plaintiff with a notice statement at the time plaintiff is hired under section 195(1)(a).  S.B. 8380, 233rd Legis., Reg. Sess. (N.Y. 2010); N.Y. Lab. Law § 195(3) (McKinney 2011); N.Y. Lab. Law § 195(1)(a) (McKinney).  The NYLL was amended in 2015, but, since it is undisputed that the alleged violations in this case took place before the 2015 amendment, only the amounts recoverable under the 2011 amendment for failure to give notice statements are applicable here.

Plaintiffs Katherine Tsigel and Victoria Leevson claim liquidated damages under the WTPA for defendants' failure to pay.  They also claim damages under the notice provisions of the WTPA, which require that employers provide employees with a notice statement upon an employee's hire and with every statement of wages thereafter.  Second Am. Compl. at ¶¶ 86-117.

17

Defendants maintain that plaintiffs cannot recover *any* damages arising from claims that occurred before April 9, 2011, because the WTPA did not come into effect until that date. Defs.' Mem. at 26-28. Katherine Tsigel and Victoria Leevson began working for defendants in May 2006 and April 2009, respectively, "and because the WTPA does not apply retroactively before its enactment on April 9, 2011," defendants argue that the two plaintiffs' NYLL claims must be dismissed. Defs.' Mem. at 26.

Defendants are correct that the 2011 amendment to the NYLL does not apply retroactively. *See Gold*, 730 F.3d at 144; *Dominguez v. B S Supermarket, Inc.*, No. 13-CV-7247, 2015 WL 1439880, at *11 (E.D.N.Y. 2015). But any sections of the NYLL in place *prior* to April 2011 would apply to plaintiffs' claims, regardless of the fact that the WTPA took effect in April 2011 and does not apply retroactively. *Cf.* Defs.' Mem. at 28 ("Leevson … is precluded from recovering under [the] WTPA for *any* violations that might have occurred prior to April 2011.") (emphasis added).

The amount of liquidated damages and damages for notice violations plaintiffs can recover, if any, is dependent on the time periods during which the alleged wage and notice violations occurred and whether plaintiffs were employees within the meaning of the NYLL. As discussed above, these facts are in dispute. Whether these provisions apply is a question for a jury.

### E.   Remand of State Law Claims

Defendants argue that although the court has supplemental jurisdiction over plaintiffs' state law breach of contract claims, because the FLSA claims should be dismissed, the state law claims have no independent federal jurisdiction and should be remanded to state court. Defs.' Mem. at 33-34.

Since both motions for summary judgment are denied and the FLSA claims will not be dismissed at this stage of the proceedings, jurisdiction over the state law claims is retained and the request for remand is denied.  *See* Hr'g Tr. 36:1-19.

## VI.   Conclusion

Plaintiffs' motion for summary judgment is denied and defendants' motion for summary judgment is denied.

A jury trial shall commence on March 6, 2017 at 2:00 p.m. in Courtroom 10 B South. The magistrate judge shall select the jury that morning at a time to be determined by the magistrate judge.

*In limine* motions will be heard on February 27, 2017 at 10:30 a.m. in Courtroom 10 B South.

By February 20, 2017, the parties shall submit to the court proposed jury charges and verdict sheets, *in limine* motions, and any supporting briefs.  They shall exchange and file with the court:  (1) lists of pre-marked exhibits proposed for use at trial, together with copies of all exhibits, and any stipulations regarding admissibility and authenticity; (2) lists of proposed witnesses together with brief summaries of their proposed testimony; and (3) stipulations with respect to all undisputed facts.

The parties shall agree on a briefing schedule. Any disputes related to briefing schedules or discovery are respectfully referred to the magistrate judge.

It seems obvious that this case should be settled.  The magistrate judge is respectfully requested to assist in settlement.

A trial of the complete issues of fact and law may well result in a mistrial, appeals, and expenses, making the suit a waste of time for everyone.

SO ORDERED.

/s/ Jack B. Weinstein
Jack B. Weinstein
Senior United States District Judge

Date:    November 10, 2016
         Brooklyn, New York

20